UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MURRAY WILLIAMS,

    Plaintiff,

v.                                            Case No:   2:13-cv-00527-FtM-29DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## OPINION AND ORDER

This cause is before the Court on the Plaintiff's Complaint filed on July 15, 2013.  (Doc. 1).   The Plaintiff, Murray Williams, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for disability insurance benefits and supplemental security income.   The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.   For the reasons set out herein, the decision of the Administrative Law Judge ("ALJ") is **AFFIRMED** pursuant to §205(g) of the Social Security Act, 42 U.S.C. §405(g).

    **I.  Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

    **A.  Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§423(d)(2), 1382(a)(3); 20 C.F.R. §§404.1505 - 404.1511, 416.905 - 416.911. The Plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987).

## B. Procedural History

On July 13, 2009, the Plaintiff filed an application for Disability Insurance Benefits asserting a disability onset date of May 30, 2009. (Tr. 106; 110). The Plaintiff's application was initially denied on November 18, 2009, and denied upon reconsideration on March 2, 2010. (Tr. 82, 86; 93, 96). A hearing was held before Administrative Law Judge Ronald S. Robins on April 8, 2011. (Tr. 41-67). The ALJ issued an unfavorable decision on May 31, 2011. (Tr. 23-40). On May 17, 2013, the Appeals Council denied the Plaintiff's request for review. (Tr. 1-7). The Plaintiff filed a Complaint in the United States District Court on July 15, 2013. (Doc. 1). This case is now ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 12).

## C. Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled. *Packer v. Commissioner of Social Security*, 542 F. App'x 890 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). An ALJ must determine whether the claimant (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform his past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to

the Commissioner at step five.  *Hines-Sharp v. Commissioner of Soc. Sec.*, 511 Fed. App'x. 913, 915 n.2 (11th Cir. 2013).

The ALJ determined that the Plaintiff met the Social Security Act's insured status requirements through December 31, 2013.  (Tr. 28).  At step one of the sequential evaluations, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since May 30, 2009, the alleged onset date.  *Id.*  At step two, the ALJ found that the Plaintiff suffered from the following severe impairments: degenerative disc disease, degenerative joint disease, chronic back pain, right index finger difficulties and hearing loss citing 20 C.F.R. §404.1520(c).  *Id*.  At step three, the ALJ determined that the Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (20 C.F.R. 404.1520(d), 404.1525, and 404.1526) (Tr. 29).  At step four, the ALJ determined that the Plaintiff has the residual functional capacity ("RFC") to perform light work.  (Tr. 30).  The ALJ limited the Plaintiff to the ability to lift and carry 10 pounds frequently and 20 pounds occasionally, stand and walk six hours in an eight-hour workday, sit six hours in an eight-hour workday, climb stairs, ramps, scaffolding and ropes, balance, stoop, kneel and crouch and avoid vibrations.  *Id*.  The ALJ did not limit the Plaintiff's ability to push or pull but stated that hearing loss may cause the Plaintiff to miss some information in normal tones.  *Id*.  The ALJ determined that the Plaintiff could not return to past relevant work.  (Tr. 33).  At step five, the ALJ determined that the Plaintiff had transferrable skills to work in other occupations existing in significant numbers in the national economy such as a welder inspector, mail clerk, small product assembler or electronic worker.  (Tr. 33-34).  The ALJ concluded that the Plaintiff is not under a disability as defined in the Social Security Act, from May 30, 2009, through the date of the decision.  (Tr. 34).

**D. Standard of Review**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Richardson v. Perales,* 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401.

Where the ALJ's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the ALJ's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote,* 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**II. Analysis**

The Plaintiff raises four issues on appeal. (Doc. 16, p. 3). As stated by the Plaintiff, they are:

(1) Whether the ALJ erred by not giving controlling weight to treating physician Dr. Emilya Hill's findings and opinions.

(2) Whether the ALJ properly considered the Plaintiff's finger limitations in RFC and other work determinations.

(3) Whether the ALJ properly considered the Plaintiff's Global Assessment Functioning scores for possible severe mental impairments.

(4) Whether the ALJ properly analyzed the Plaintiff's pain in accordance with recent Eleventh Circuit case law.

### A. Whether the ALJ erred by not giving controlling weight to treating physician Dr. Emilya Hill's findings and opinions

The Plaintiff argues that the ALJ incorrectly gave treating physician, Emilya S. Hill, M.D.'s findings no weight but gave non-examining state agency physician Dr. Steele's findings substantial weight. (Doc. 16, p. 10) (Tr. 32-33). The Plaintiff further argues that Dr. Steele's RFC assessment was completed on March 1, 2010, prior to Drs. Pizzaro and Hill's additional medical records which showed continued pain, limping gait and ineffective medications. (Doc. 16, p. 10) (Tr. 32-33). Therefore, the Plaintiff argues, the ALJ's findings are not supported by substantial evidence. (Doc. 16, p. 10). Additionally, the Plaintiff argues that the ALJ erred in discounting Dr. Hill's findings because Dr. Hill only treated the Plaintiff for four months and the ALJ alleged that Dr. Hill based her findings solely on the Plaintiff's subjective complaints, rather than medically acceptable techniques. (Doc. 16, p. 10-11) (Tr. 32).

The Commissioner argues that the ALJ properly discounted Dr. Hill's opinion because Dr. Hill's opinion seemed to have uncritically accepted some of the Plaintiff's subjective complaints, contradicted some of the Plaintiff's testimony, and lacked substantial support from Dr. Hill's own notes or other evidence in the record. (Doc. 17, p. 6) (Tr. 32). The Commissioner further argues that Dr. Steele's opinion was consistent with the evidence in the record, including the evidence presented after Dr. Steele's opinion, and, therefore, the ALJ rightly accorded the opinion

significant weight. (Doc. 17, p. 9). The Commissioner cites the Plaintiff's 2009 emergency room visit and consultative examination, 2010 MRI and visit with Dr. Hill, and 2011 visit with and notes from Dr. Hill in support of the ALJ's RFC determination that the Plaintiff could perform light work with some limits to sitting, lifting and moving. (Doc. 17, p. 4-6). Therefore, the Commissioner argues that the ALJ properly weighed Dr. Hill's opinion. (Doc. 17, p. 10).

At the fourth step in the evaluation process, the ALJ is required to determine a claimant's RFC and based on that determination, decide whether the plaintiff is able to return to his or her previous work. *McCruter v. Bowen,* 791 F.2d 1544, 1547 (11th Cir. 1986). The determination of a claimant's RFC is within the authority of the ALJ and along with the claimant's age education, and work experience, the RFC is considered in determining whether the claimant can work. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997). Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the ALJ's RFC determination at step four. *See Rosario v. Comm'r of Soc. Sec.,* 877 F.Supp.2d 1254, 1265 (M.D. Fla. 2012).

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physician and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Social Security,* 631 F3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the

ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)). The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has concluded that good cause exists when the: "treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.*

"Generally, the opinions of examining or treating physicians are given more weight than non-examining or non-treating physicians unless 'good cause' is shown. *Poellnitz v. Astrue*, 349 F. App'x 500, 502 (11th Cir. 2009) (citing 20 C.F.R. §404.1527(d)(1), (2), (5); and *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). A doctor's opinion may be discredited when it is contrary to or unsupported by the evidence of record, or the opinion is inconsistent with the doctor's own medical records. *Id*. (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004)). "Where an ALJ articulates specific reasons for failing to accord the opinion of a treating or examining physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error." *Id*. (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)).

On December 2, 2010, the Plaintiff saw Dr. Hill for low back pain from a work accident that occurred in the year 2000. (Tr. 319). The Plaintiff claimed that his pain was exacerbated by lifting, bending, twisting, sitting or standing, and relieved by lying down, resting and heat. (Tr. 319). The Plaintiff reported that his daily activities had diminished because of the pain. (Tr. 319). Dr. Hill noted that the Plaintiff had numbness in his right leg, had a limp, but his lumbosacral spine and his strength were normal. (Tr. 322). On February 21, 2011, the Plaintiff saw Dr. Hill. (Tr.

317). The Plaintiff reported that he was satisfied and doing well on his current therapy, his activities of daily living improved, he followed all recommendations including stretching, and he was not "better or worse, current dose has ameliorated quality of life and allows patient to work or function at a higher capacity." (Tr. 317). Dr. Hill determined his lumbosacral spine was tender and his right leg had numbness, but his gait was normal. (Tr. 318). Dr. Hill had access to the Plaintiff's MRI completed on January 16, 2010. (Tr. 323). The MRI showed a "mild broad based disc bulge with mild right neural foraminal stenosis and contact of the left L4 nerve root by the disc bulge as it exits the foramen. There is no significant central canal stenosis."  (Tr. 323).

On March 31, 2011, Dr. Hill completed a Medical Statement Regarding Inflammatory Arthritis for Social Security Claim (Tr. 327-328). In the statement, Dr. Hill diagnosed the Plaintiff with severe degenerative disc disease status post left hemilaminectomy, and chronic lower back pain at the L4 nerve root, and arthritis in the right hand, right and left knee, and right shoulder. (Tr. 327). Dr. Hill determined that the Plaintiff could stand for 15 minutes at one time, and sit for 30 minutes at one time, work for 1 hour a day, lift 10 pounds occasionally and zero pounds frequently, occasionally bend, stoop, do fine manipulations with the left hand, do gross manipulations with the left hand, raise the left arm over shoulder level, and never do fine manipulations with the right hand, gross manipulations with the right hand, or raise the right arm over shoulder level. (Tr. 328).

Dr. Hill also completed a Physical Capacity Evaluation (Tr. 329-330). Dr. Hill determined the Plaintiff could stand/walk 2 hours at one time in an 8 hour day, 2 hours total in an 8-hour work day; the Plaintiff can sit for 1 hour at a time in an 8–hour work day, and sit for a total of 1 hour in an 8-hour work day; the Plaintiff can lift up to 10 pounds occasionally; the Plaintiff cannot use hands for simple grasping , pushing and pulling, and fine manipulation; the Plaintiff

cannot use feet for repetitive movements in operating foot controls; the Plaintiff can bend occasionally, but cannot squat, crawl, or climb; and, the Plaintiff can reach above shoulder level. (Tr. 329-330).

The ALJ carefully reviewed all of Dr. Hill's records. (Tr. 32). The ALJ stated that he gave Dr. Hill's opinion no weight because it heavily relied on the claimant's reports of his subjective symptoms and limitations, and Dr. Hill's own notes did not substantially support her opinion. (Tr. 32). Dr. Hill's own notes show that the Plaintiff had a limp in December 2010 but in February 2011 his gait was normal, even with numbness in his right leg. Dr. Hill determined that the Plaintiff's strength was normal, and in February 2011, he was doing well on his current therapy, and his activities of daily living had improved. Dr. Hill's own notes do not support a finding that the Plaintiff is only able to sit for only one hour a day or stand and walk for only 2 hours in a day, or lift only 10 pounds.

Other medical records contradict Dr. Hill's conclusions as to the Plaintiff's ability to use his hands and feet. The ALJ noted that Dr. Hill determined the Plaintiff is "unable to use his hands for repetitive simple grasping, pushing/pulling, or fine manipulation, but he is able to reach able shoulder level." (Tr. 32). Dr. Hill also found that the Plaintiff was unable to use his feet for repetitive movements such as operating foot controls, and could bend occasionally, but could never squat, crawl, or climb. (Tr. 32). Eshan M. Kibria, D.O. conducted an independent medical examination on September 15, 2009, and determined the Plaintiff had 5/5 grade motor strength of all 4 extremities including hand grips. (Tr. 227). Dr. Kibria found the Plaintiff could hold a cup in both hands, could hold a pencil/pen in both hands, could button and unbutton, but could not extend right index finger alone but could with use of his middle finger. (Tr. 227). Dr. Kibria determined the Plaintiff's gait was anatalgic, and he favored his right leg, but did not use

assistive devices. (Tr. 227). The medical records of Dr. Kibria contradict Dr. Hill's conclusions, and the ALJ did not err in giving no weight to Dr. Hill's determinations as to the Plaintiff's abilities as to his hands and feet.

Robert Steele, M.D., a medical consultant reviewed the Plaintiff's records on March 1, 2010. (Tr. 282-289). Dr. Steele noted that the Plaintiff had degenerative disc disease, degenerative joint disease, chronic knee, a hand tendon repair, knee cap replacement and a lumbar laminectomy. (Tr. 283). Dr. Steele found the Plaintiff to have a gait within normal limits at a psychological consultative examination but antalgic at the physical consultative examination. (Tr. 283). Dr. Steele noted that the Plaintiff did not use any assistive devices, had single leg raise position on the right at 70 degrees, his strength was 5/5, and is right index finger had decreased range of motion, but was essentially within normal limits for grip strength and dexterity, and his range of motion was functional. (Tr. 283). Dr. Steele determined the Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, could stand/walk 6 hours in an 8-hour workday, could sit 6 hours in an 8-hour workday, and was unlimited in push or pull for hands and feet. (Tr. 283). Dr. Steele determined the Plaintiff could climb a ladder, rope and scaffolds only occasionally, and had no other postural limitations. (Tr. 284). Dr. Steele found the Plaintiff had no manipulative, visual, and communicative limitations (Tr. 285-286). Dr. Steele determined the Plaintiff should avoid exposure to vibrations and hazards, but had no other environmental limitations (Tr. 286).

On April 21, 2010, the Plaintiff went to Antonio Pizarro, M.D. complaining of back pain. (Tr. 310). Dr. Pizarro saw the Plaintiff on May 20, 2010 indicating the Plaintiff had back pain, but was not in distress, and the pain was localized in the lumbar spine. (Tr. 308). The Plaintiff saw Dr. Pizarro on June 18, 2010 and July 19, 2010 with no change in symptoms. (Tr. 305-306).

Dr. Pizarro's records do not provide support for the extreme limitations found by Dr. Hill. Dr. Pizarro's notes were not extensive and mentioned back pain in some of them, but did not support the conclusion that the Plaintiff could only sit for 1 hour and stand or walk for 2 hours in an 8 hour day.

The ALJ clearly reviewed Dr. Hill's records as well as the other medical records carefully. He found that Dr. Hill's medical records did not support the limitations she found in the Medical Statement and in the Physical Capacity Evaluation. Dr. Hill's records indicate that the Plaintiff was doing well on his current therapy and his activities of daily living had improved. The Plaintiff failed to show how Dr. Hill's treatment records support the limitations of the Plaintiff being unable to sit for more than 1 hour in an 8 hour day, or is unable to grasp, push, pull, or do fine manipulations. The ALJ notes that Dr. Hill's limitations do contradict other medical evidence in the record and contradict the Plaintiff's own testimony when he stated he was able to lift 20 pounds, vacuum, do dishes and drive a car. The other medical evidence of record did not find the Plaintiff to be as limited as alleged by Dr. Hill. The Court recognizes that Dr. Hill treated the Plaintiff after Dr. Kibria conducted his examination and Dr. Steele reviewed the Plaintiff's medical records, however, Dr. Hill failed to include in her medical records support for the limitations that she accorded the Plaintiff. In addition, the Plaintiff testified that he was able to lift 20 pounds, has difficulty stooping, bending, twisting squatting and kneeling, but does do stretches every day, and does dishes, vacuum, and drive. (Tr. 50-52). The Court finds that Dr. Hill's opinion was not supported by the evidence of record, there is other medical evidence in the record that is contrary to Dr. Hill's opinion, and further that Dr. Hill's opinion is inconsistent with her own records, and the Plaintiff's own testimony. The Court determines that the ALJ did not err in giving no weight to Dr. Hill's opinion, and

significant weight to the State Agency evaluations, and the ALJ's decision is supported by substantial evidence.

### B. Whether the ALJ properly considered the Plaintiff's finger limitations in RFC and other work determinations

The Plaintiff argues that the ALJ improperly failed to include pushing, pulling, grasping, and fine manipulation limitations in the RFC assessment resulting from the Plaintiff's right index finger injury.  (Doc. 16, p. 12).  The Plaintiff argues that these manipulative limitations would have precluded the Plaintiff from performing the step five other jobs of welder inspector, mail clerk, small product assembler and electronic worker which require frequent and repetitive movements.  (Doc. 16, p. 12-13) (Tr. 60, 62-64).  Therefore, the Plaintiff argues, the ALJ's RFC assessment was not supported by substantial evidence and the step five other work determination was in error because it did not consider the Plaintiff's manipulative limitations.  (Doc. 16, p. 12-14).

The Commissioner argues that the ALJ properly evaluated the Plaintiff's right finger limitations because Dr. Kibria's examination showed that the Plaintiff had full strength in his extremities and Dr. Steele's opinion discussed Dr. Kibria's examination.  (Doc. 17, p. 10) (Tr. 31-33, 47, 227, 229, 283, 285).  The Commissioner further argues that the VE's testimony that a person with a non-dominant index finger injury could still perform the step five other work also provides substantial evidence for the ALJ's decision.  (Doc. 17, p. 11) (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)) (Tr. 61-63, 65).  Therefore, the Commissioner argues that the ALJ properly evaluated the Plaintiff's index finger injury and rejected the limitations.  (Doc. 17, p. 11).

In determining RFC, the ALJ must consider all of the claimant's impairments, including those impairments that are not severe. 20 C.F.R. § 404.1520(e); 404.1545. The ALJ must first assess the nature of the physical impairment and then assess the extent of the limitations on a regular and continuing basis in determining whether the claimant may perform other work in the national economy. 20 C.F.R. § 404.1545(b)(c). The ALJ must consider but is not bound by medical opinions for the ALJ's final determination of the Plaintiff's RFC and ability to perform other work. 20 C.F.R. § 404.1527(e)(2).

In the present case, the ALJ determined in the step four RFC assessment that the Plaintiff had the capacity to perform light work, lift and carry 10 pounds frequently and 20 pounds occasionally and push or pull without limitations. (Tr. 30). In step five, the ALJ determined that the Plaintiff's transferable skills and RFC assessment allowed the Plaintiff to perform other work as a welder inspector, mail clerk, small product assembler and electronic worker. (Tr. 34). In support of his RFC and other work assessments, the ALJ substantially relied on Dr. Kibria's 2009 examination showing the Plaintiff's graded motor strength was 5/5, including hand grip, and the VE's testimony that a person with a non-dominant hand injury could perform the other work. (Tr. 31). Therefore, the Plaintiff's claim that the ALJ improperly evaluated the Plaintiff's RFC and ability to perform other work regarding the Plaintiff's non-dominant index finger limitation is without merit.

### C. Whether the ALJ properly considered the Plaintiff's Global Assessment Functioning scores for possible severe mental impairments

The Plaintiff argues that at step two the ALJ considered the Plaintiff's 60 GAF score but improperly failed to consider the Plaintiff's several 40-46 GAF scores. (Doc. 16, p. 14-16) (Tr. 28-29). The Plaintiff argues an Eleventh Circuit case determined that 41-50 GAF scores constituted severe mental impairments and that failing to consider these scores was not harmless

error. (Doc. 16, p. 15-16) (citing *McCloud v. Barnhart*, 166 F. App'x 410 (11th Cir. 2006)). The Plaintiff argues that the ALJ's failure to consider these scores produced an inaccurate RFC and step five other work assessments. (Doc. 16, p. 16-17). Alternatively, the Plaintiff argues that even if the 40-46 GAF scores and corresponding depression were deemed not severe, the ALJ still failed to properly consider their limiting effects. (Doc. 16, p. 16).

The Commissioner states that it has properly denied adopting the GAF scale in disability cases and has found that the GAF scale does not directly correlate to the severity of mental disorders. (Doc. 17, p. 13). The Commissioner argues that GAF scores are not necessarily entitled to weight and in the present case, the low GAF scores dealt more with the Plaintiff's financial circumstances than his mental impairments, which Dr. Dreilinger stated in 2009 when assigning a 40 GAF score. *Id.* Furthermore, the Commissioner argues that Dr. Dreilinger's 2009 examination revealed an essentially normal mental status which was consistent with the ALJ's finding that the Plaintiff's mental impairments were non-severe. (Doc. 17, p. 15) (Tr. 260).

At step two, "[a]n impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). A severe impairment must bring about at least more than a minimal reduction in a claimant's ability to work, and must last continuously for at least twelve months. *See* 20 C.F.R. §§ 404.1505(a). This inquiry "acts as a filter" so that insubstantial impairments will not be given much weight. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). While the standard for severity is low, the severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

According to the Eleventh Circuit, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe," but only that the ALJ considered the claimant's impairments in combination, whether severe or not. *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, ___ F. App'x ___, 2013 WL 6840288, at *1 (11th Cir. Dec. 30, 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)).

Even though the ALJ did not find the Plaintiff's mental impairments severe, he still considered them in combination with the Plaintiff's other impairments, therefore, even if the ALJ erred in failing to list the Plaintiff's mental impairments as severe, the error was harmless. The ALJ noted that the Plaintiff was diagnosed with an adjustment disorder and cited to a Global Assessment of Functioning (GAF) scale score of 60. (Tr. 28). The ALJ found the Plaintiff had no limitation in daily living, mild limitation in social functioning, concentration, persistence or pace, no episodes of decompensation concluding that the Plaintiff had no more than mild limitation in the first three functional areas and no episodes of decompensation which lead to a finding of nonsevere. (Tr. 29).

The ALJ did fail to mention previous GAF scores of 40 through 46 while the Plaintiff was treated at the Ruth Cooper Center. (Tr. 256, 258, 259, 261). The issue is whether the ALJ erred in failing to consider these other GAF scores. "The GAF Scale describes an individual's overall psychological, social, and occupational functioning as a result of mental illness, without including any impaired functioning due to physical or environmental limitations." *Mathis v. Astrue*, 2008 WL 876955, *7, n. 4 (M.D. Fla. March 27, 2008) (citing Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") (4th ed. 1994) at 32). A GAF score is a subjective determination

based on a clinician's judgment of a person's overall level of functioning. *Wilson v. Astrue*, 653 F. Supp. 2d 1282, 1293 (M.D. Fla 2009) (citation omitted). Even though GAF scores have been cited in social security cases, "the Commissioner has declined to endorse the GAF score for 'use in the Social Security and SSI disability programs,' and has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" *Wind v. Barnhart*, 133 F. App'x 684, 692 n.5 (11th Cir. 2005) (citations omitted). A low GAF score by itself is not necessarily determinative of a severe mental impairment. *Bailey v. Astrue*, 2010 WL 3220302, *8 (M.D. Fla. Aug. 13, 2010). In the instant case, although the ALJ did not mention the low GAF scores of 40 – 46, he did clearly discuss the Plaintiff's mental impairments and explained in detail how each area was considered. There is no requirement and an ALJ refer to every piece of medical evidence in the record as long as the decision is not so broad that it fails to allow a reviewing court the ability to determine if the ALJ considered a plaintiff's medical condition as a whole. *Dyer v. Barnhart*, 395 F. 3d 1206, 1210-1211 (11th Cir. 2005) (citing *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)). In this case, the ALJ considered the Plaintiff's medical conditions as a whole, and did not err in failing to include the Plaintiff's low GAF scores.[1]

### D. Whether the ALJ properly analyzed the Plaintiff's pain in accordance with Eleventh Circuit case law

The Plaintiff argues that medical evidence does not support the ALJ's finding that the Plaintiff can perform light work with limited carrying abilities. (Doc. 16, p. 17). The Plaintiff contends that his pain only allows him to perform less than sedentary work. *Id*. The Plaintiff

---

[1] The Plaintiff cites to *McCloud v. Barnhart*, 166 F. App'x 410, 418 (11th Cir 2006) for the proposition that an ALJ errs if he fails to include a discussion of GAF Scores in his decision. In the *McCloud* case, the Court determined that the ALJ misinterpreted the GAF Scores in the decision and the Eleventh Circuit remanded the case because it could not determine from the record the weight the ALJ assigned the GAF score. *Id*. In the instant case, the ALJ did not misinterpret a GAF Score.

argues that medical records demonstrate degenerative disc disease, degenerative joint disease, chronic back pain, hearing loss, finger problems and weakened knees and that this objective evidence establishes disabilities consistent with Eleventh Circuit law. (Doc. 16, p. 17) (citing *Holt v. Sullivan*, F.2d 1221, 1223 (11th Cir. 1991)). The Plaintiff also argues that the ALJ incorrectly discounted the Plaintiff's statements concerning the intensity, persistence and limiting effects of the Plaintiff's symptoms because the ALJ failed to specify reasons for discounting the Plaintiff's testimony which means the testimony must be accepted as true. (Doc. 16, p. 18-19) (citing *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Cannon v. Bowen*, 858 F. 2d 1541, 1545 (11th Cir. 1988)).

The Commissioner argues that the ALJ properly discounted the Plaintiff's statements of pain because the Plaintiff's statements were inconsistent with other evidence. (Doc. 17, p. 16). In particular, the Commissioner argues that the Plaintiff testified about stopping work in May 2009 due to pain but in June 2009 only stated a four out of ten pain level and three out of ten pain level in January 2010. (Doc. 17, p. 16) (Tr. 31-32, 268, 278). The Commissioner further argues that the ALJ properly noted discrepancies between the Plaintiff's finger impairment allegations and Dr. Kibria's examination which showed the Plaintiff's full motor strength, including the ability to grip and hold objects. (Doc. 17, p. 16) (Tr. 33, 227). The Commissioner argues that the inconsistencies between the Plaintiff's allegations and objective evidence support the ALJ's decision to discredit the Plaintiff's pain allegations. (Doc. 17, p. 16-17) (citing *Hoffman v. Astrue*, 259 F. App'x 213, 217, 219 (11th Cir. 2007) (discounting credibility was supported in part by normal examination findings); *Smith v. Soc. Sec. Admin.*, 272 F. App'x 789, 797-98 (11th Cir. 2008) (allegations of severe pain were discounted because of inconsistency with medical records showing pain levels of four to five out of ten)).

In determining RFC, the ALJ must consider all of the claimant's impairments, including those impairments that are not severe. 20 C.F.R. § 404.1520(e); 404.1545. The ALJ must consider the claimant's complaints and articulate specific reasons for discrediting the complaints. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). Such discrediting is reviewed only for whether substantial evidence supported the ALJ's decision to discredit the claimant's complaints. *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002). Normal examination findings and low pain levels can be used to discredit claimant's allegations. *See Hoffman*, 259 F. App'x at 217, 219; *Smith*, 272 F. App'x at 797-98.

In the present case, the ALJ mentioned degenerative disc disease, degenerative joint disease, right index finger difficulties, hearing loss and chronic back pain in the step two listing of severe impairments. (Tr. 28). In the step four RFC assessment, the ALJ considered the impairments and limited the Plaintiff to light work with limits as to hearing, carrying, standing, walking, climbing and other movements. (Tr. 30). The Plaintiff himself stated pain levels of only four out of ten in June 2009 and three out of ten in January 2010. (Tr. 268, 278). Additionally, Dr. Kibria found a mostly normal hand examination, including the ability to grip, which demonstrates the Plaintiff's capability to perform manipulative functions. Therefore, the ALJ's consideration of the Plaintiff's limitations, including chronic back pain, the Plaintiff's own statements about limited pain and Dr. Kibria's mostly normal hand examination provide substantial evidence demonstrating that the ALJ properly considered the Plaintiff's pain impairments and discounted any complaints inconsistent with the evidence.

### III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the Commissioner is supported by substantial evidence and decided according to the proper legal standard.

**IT IS HEREBY ORDERED:**

The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g). The Clerk is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on September 26, 2014.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties